## JAMES S. McLAUGHLIN ET AL. vs. JOSEPH B. THOMAS, JR., ET ALS.

First Judicial District, Hartford, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A verdict should not be set aside where it is apparent that there was some evidence upon which the jury might reasonably have reached their conclusion.

Notwithstanding the rule that oral evidence is inadmissible to vary or explain a written agreement, such evidence may always be received, as between the original parties, to prove that the writing in suit was procured by false and fraudulent representations; otherwise the rule might be invoked as a means of perpetrating or shielding the alleged fraud.

A promise to do an act in the future, when coupled with a present intent not to fulfil it, is a false and fraudulent representation.

The repudiation of a contract obtained by fraud may be as satisfactorily evidenced by the acts and conduct of the defrauded party as by a formal notification of his dissent.

Whether a contract has been repudiated or not is a question of fact for the jury.

It is competent for the trial judge to direct the attention of the jury to the evidence upon a given subject and to comment upon its weight.

The defendants alleged that the written contract upon which the plaintiffs relied had been secured by fraud, and in his charge the trial judge instructed the jury that while the burden of proof was upon the defendants to establish the fraud alleged, it need not be proved directly but might be inferred from facts and circumstances surrounding the transaction, provided they were such as to lead fairly and reasonably to such inference, "for fraud is not otherwise to be presumed." *Held* that while the quoted expression was not well chosen, it could not have misled the jury when taken in connection with its context, the manifest purpose of which was to emphasize the fact that while fraud might be inferred as indicated, it could not be presumed.

Evidence of other frauds of like character with those in suit, and relating to the same subject-matter, committed by the same parties at or about the same time, is admissible as tending to prove the fraudulent nature of the acts alleged.

Argued October 1st—decided December 19th, 1912.

ACTION to recover damages for alleged breach of contract to purchase a stallion, and for a decree requiring

the defendants to execute joint and several notes for the purchase price, brought to the Superior Court in Hartford County and tried to the jury before *Reed, J.;* verdict and judgment for the defendants, and appeal by the plaintiffs. *No error.*

*William F. Henney* and *Joseph P. Tuttle,* for the appellants (plaintiffs).

*Birdsey E. Case,* with whom was *Andrew J. Broughel,* for the appellee R. G. Henry (defendant).

*Hugh M. Alcorn,* for appellees H. P. and J. E. Eno (defendants).

*Howard J. Bloomer,* for appellees Thomas and Strong (defendants).

RORABACK, J. The plaintiffs bring this action against five of the signers of a writing which reads as follows:—

" Simsbury and Vicinity
September, 1907.
Name of Stallion—Esprit. De. Vin 4225
McLaughlin Brothers agree to sell the above named Stallion for $3,600 to the other undersigned subscribers, who, wishing to improve their stock, agree to pay McLaughlin Brothers $300 for each share in said Stallion.
Capital Stock, $3,600.   No. of Shares, 12.
Payments to be made in cash; or one-third in one year, one-third in two years, and one-third in three years, after July 1, 1908, secured by joint and several negotiable notes with interest.
McLaughlin Bros., Joseph B. Thomas, Jr., Frank H. Strong, C. F. Fienemann, O. A. Raymond, Harry P. Eno, Jonathan E. Eno, A. S. Janes, C. A. Hawkes,

E. A. Isaacson ½, J. E. Callahan ½, F. H. Callahan ½, R. G. Henry, Geo. L. Wells ½, S. N. Woodhouse ½, J. B. Ryan ½."

The complaint alleges that all the signers of the contract have complied with its terms except Joseph B. Thomas, Jr., Harry P. Eno, Jonathan E. Eno, Frank H. Strong and R. G. Henry, the defendants in this action. The record discloses that some of the signers of the contract, who, it is alleged, have complied with its terms, signed notes in pursuance of an agreement in writing made with the plaintiffs that they would not be held liable on these notes "until each and every one of the subscribers to said contract shall have signed the same."

As stated, the suit was originally brought against the five signers above named, and on their motion other signers to the writing were made parties.

The plaintiffs sought "a decree requiring defendants to execute the joint and several notes, or pay for their share in cash, as provided in said contract."

The answers interposed by the several defendants all involve the question whether they were induced to sign the writing in suit by the false representations of the plaintiffs.

The record contains twenty-four reasons of appeal. Those pursued by the appellants relate to the denial of a motion to set aside the verdict as against the evidence, the refusal to charge as requested and to the charge as it was made, and the improper admission of evidence.

It appears by an examination of the record that there was evidence from which the jury might reasonably have found against the plaintiffs upon the question of fraud. The judge who heard and weighed the testimony of the witnesses, by overruling the motion to set aside the verdict, has given his approval to the

action of the jury. This court has repeatedly declared that the trial court should not set aside a verdict "where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption, or partiality." *Burr* v. *Harty,* 75 Conn. 127, 129, 52 Atl. 724; *Birdseye's Appeal,* 77 Conn. 623, 625, 60 Atl. 111; *Bradbury* v. *South Norwalk,* 80 Conn. 298, 300, 68 Atl. 321; *Wyeman* v. *Deady,* 79 Conn. 414, 416, 65 Atl. 129. With these considerations in mind we cannot find that there was error in refusing to set aside the verdict.

During the trial in the Superior Court the defendants' main contention was that a large number of statements and misrepresentations, made by the plaintiffs' agents, were false and fraudulent and were such as to furnish a good defense to the action upon this alleged contract.

For the purpose of showing that the defendants were induced to sign this writing by the fraudulent representations of the plaintiffs, the defendants offered evidence tending to prove, and claimed to have proven, that one Raymond and one Lawrence, when acting as agents for the plaintiffs, falsely represented to the defendants that they were about to form a corporation to purchase from the plaintiffs a certain stallion which was then represented to be of great value; that they desired to obtain the names of several men of good financial standing and ability located in Simsbury and vicinity, in order to enable the plaintiffs to form such a corporation; that if they would sign the written instrument they would not be liable thereon, or be required to perform the conditions thereof, until such corporation

should be formed by the plaintiffs; that they would not be bound by the terms of the contract unless they should thereafter see fit to sign the notes therein referred to; that at the meeting to be called by the plaintiffs for the purpose of organizing such corporation any and all of these defendants could withdraw entirely and not be bound either by this writing or to take stock in the corporation; that the name of each signer of the instrument would be submitted for approval to these defendants, and that no person would be accepted as a stockholder in the corporation unless such person was approved by these defendants and was of satisfactory financial responsibility and a resident of Simsbury or vicinity; that these defendants would not be holden to the performance of the instrument unless and until said corporation was formed; that after said names had been secured a meeting would forthwith be called and held by the plaintiffs for the purpose of organizing the corporation; and that these representations were false and made with the knowledge of their falsity, and that the defendants were thereby induced to sign the contract.

Parol evidence of these alleged false representations was properly admitted notwithstanding the plaintiffs' objections that it tended to change the terms of a written agreement. In *Feltz* v. *Walker*, 49 Conn. 93, 98, this court said: "It is unfortunately true that written instruments are often used or attempted to be used as a means of perpetrating a fraud; it is equally true that there is no rule of law that deprives the court of the power to defeat the attempt whenever it is discovered. Fraud vitiates all contracts, written or verbal and sealed or unsealed. To this rule there is no exception as between the original parties. With equal reason no contract, whatever its form or however valid for other purposes, can lawfully be used for a fraudulent purpose,

There is no contract sealed or unsealed that is sufficient of itself, unaided by other circumstances, to cover and protect fraud.   And rules of evidence which exclude parol proof when offered to affect written instruments, will generally give way and allow the fraud to be proved." *Arnold* v. *Lane,* 71 Conn. 61, 40 Atl. 921; see also *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 39 Atl. 104; *Fox* v. *Tabel,* 66 Conn. 397, 34 Atl. 101; *Ayres* v. *French,* 41 Conn. 142, 153; *Roy* v. *Moore,* 85 Conn. 159, 82 Atl. 233.

The plaintiffs in their requests to charge asked for an instruction to the effect that a promise to do an act in the future could not be untrue at the time it was made, and therefore could not be a fraudulent representation.   The presiding judge, after giving appropriate instructions to the jury as to the burden of proof upon the issues raised upon the alleged fraudulent representations set forth in the defendants' answers, instructed them that "a promise to do an act in the future cannot be untrue at the time it is made, and, therefore, regarded as a mere promise, cannot be a fraudulent representation, for, gentlemen, there is no doubt that this doctrine is correct.   But in applying it to this case, something more must be said, and that is, that if at the time these promises to do something in the future were made by the plaintiffs or their agents, and they were made in bad faith, and they did not intend to perform them, then such promises would be fraudulent."

These instructions, when read together, were sufficient for the guidance of the jury in the determination of the issues upon this part of the case.   A promise is sometimes the very device used for the purpose of accomplishing a fraud, and the most effectual means to. that end.   Such is the case in the purchase of goods with the intention not to pay for them.   It is the fraud-

ulent promise to pay that accomplishes the wrong.   In such a case it would be a singular defense for the purchaser to make that he had only failed to perform his promise.   2 Cooley on Torts (3d Ed.) pp. 929, 930. The beneficiary in a will, when the maker thereof was on his deathbed and about to make a codicil to give a certain benefit to another, said to him that he need not trouble himself, for he, the beneficiary, would make the conveyance according to the wishes expressed.   The beneficiary was held to this promise as a fraud, upon proof of his intention not to perform.   *Dowd* v. *Tucker*, 41 Conn. 197, 203, 205; see also *Buckingham* v. *Clark*, 61 Conn. 204, 209, 23 Atl. 1085; *Sallies* v. *Johnson*, 85 Conn. 77, 80, 81 Atl. 974.

Complaint is made because the court did not instruct the jury as requested, that "in order to avoid a contract on the ground of fraud, the repudiation must take place within a reasonable time after the fraud is discovered." In reply to this request the court said to the jury: "This is correct.   But it is for you to say whether the defendants did take any steps within a reasonable time to repudiate the contract, or to give notice of it to the plaintiffs.   I think you may well consider whether the failure of these defendants, or either of them, to appear at the meeting, after notice, or to sign the notes, or refuse to accept the horse, or to do anything further about the matter, was not a sufficient repudiation of the contract, and notice to the plaintiffs."

The court properly left the consideration of these questions to the jury as a question of fact.   *Fox* v. *Tabel*, 66 Conn. 397, 400, 34 Atl. 101.   It directed the attention of the jury to the evidence upon this subject and commented upon the weight of it.   This is permissible.   *State* v. *Cabaudo*, 83 Conn. 160, 163, 76 Atl. 42, and cases cited therein.

In one passage of the charge the jury were told that

McLaughlin *v.* Thomas.

"the burden of proof is upon the defendants to prove by a fair preponderance of the evidence all of the affirmative allegations set up by them in their answers. While the defendants who have alleged fraud are bound to prove it, yet it is not necessary that it should be proved directly, but fraud may be inferred from the facts and circumstances surrounding the transaction; such facts and circumstances ought, however, to be such as to lead fairly and reasonably to the inference, for fraud is not otherwise to be presumed."

Objection is made to the last portion of this passage as being in violation of the elemental rule that fraud will never be presumed. The words criticised were not well chosen, but it is impossible to interpret them, as the appellants do, when read with their context, or to conceive that the jury could have understood the court as instructing them that fraud could be presumed or found except upon proof affirmatively establishing it, either directly or by a fair and reasonable inference from the facts and circumstances surrounding the transaction. The manifest purpose of the court was to emphasize the fact that while fraud might be inferred as indicated, it could not be presumed.

Testimony was offered by the defense from James B. Ryan, one of the parties to the writing, as to a conversation which he had with the plaintiffs' agents leading up to his signing of the writing. This was offered to support the allegation of fraud set forth in the answer of the two Enos.

In *Lincoln* v. *Claflin*, 7 Wall. (U. S.) 132, 138, an action was brought for fraudulently obtaining property, and evidence of other frauds of a like character, committed by the defendants at or near the same time, was held to be admissible. "Its admissibility," said the court, "is placed on the ground that where transactions of a similar character, executed by the same parties, are

closely connected in time, the inference is reasonable that they proceed from the same motive. The principle is asserted in *Cary* v. *Hotailing*, 1 Hill (N. Y.) 317, and is sustained by numerous authorities. The case of fraud, as there stated, is among the few exceptions to the general rule that other offenses of the accused are not relevant to establish the main charge." In *Butler*. v. *Watkins*, 13 Wall. (U. S.) 456, 464 (80 U. S., Bk. 20, L. Ed. 629, 630), speaking on the same subject, the court said: "In actions for fraud, large latitude is always given to the admission of evidence. If a motive exists prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct towards another, at or about the same time, and in relation to a like subject, was actuated by the same spirit." See also *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 37, 39; *Luckey* v. *Roberts*, 25 Conn. 486, 492; *Stockwell* v. *Silloway*, 113 Mass. 384.

The evidence of Ryan that the plaintiffs obtained his signature to this pretended contract at or near the same time and substantially in the same manner as the Enos, was clearly admissible under these authorities.

What we have already said concerning the admissibility of parol evidence to vary the terms of a written contract, and as to the effect of a promise to do an act in the future, applies to and disposes of several other assignments of error respecting the admission of testimony.

There is no error.

In this opinion the other judges concurred.